WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ronald M. Hardin, | No. CV-21-08060-PCT-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Ronald Hardin seeks judicial review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security, which denied Plaintiff's claim for disability insurance benefits and supplemental security income. For reasons stated below, the Court will affirm the decision.

**I.    Background.**

Plaintiff filed a claim for social security benefits in February 2018, alleging disability on August 8, 2017 due to a work-related back injury. Administrative Transcript ("Tr.") 185-97, 746-49. Plaintiff and a vocational expert testified at a hearing before an Administrative Law Judge ("ALJ") on February 21, 2020. Tr. 32-55. The ALJ issued a written decision denying the claim on March 3, 2020. Tr. 15-31. This decision became Defendant's final decision when the Appeals Council denied review on January 26, 2021. Tr. 1-6.

Plaintiff then commenced this action for judicial review. Doc. 1. The parties briefed the issues after receipt of the certified administrative transcript. Docs. 19, 25, 28, 29. Because the ALJ's decision is supported by substantial evidence and not based on legal error, the Court will affirm it.

## II. Standard of Review.

The Court reviews only those issues raised by the party challenging the ALJ's decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may vacate the decision where it is based on legal error or not supported by substantial evidence. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion. *Id.* In determining whether substantial evidence supports the ALJ's decision, the Court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Orn*, 495 F.3d at 630 (citation omitted). The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence, and the decision must be upheld where the evidence is susceptible to more than one rational interpretation. *Magallanes*, 881 F.2d at 750; *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

## III. The Five-Step Evaluation Process.

Whether Plaintiff is disabled is determined using a five-step process. Plaintiff must show that (1) he has not engaged in substantial gainful activity since the alleged disability date, (2) he has a severe impairment, and (3) the impairment meets or equals a listed impairment or (4) his residual functional capacity ("RFC") – the most he can do with his impairments – precludes him from performing past work. If Plaintiff meets his burden at step three, he is presumed disabled and the process ends. If the inquiry proceeds and Plaintiff meets his burden at step four, then (5) Defendant must show that Plaintiff is able to perform other available work given his RFC, age, education, and work experience. *See* 20 C.F.R. §§ 404.1520 (disability in general); 416.920(a) (disability for adults).

Plaintiff has met his burden at steps one and two – he has not engaged in substantial gainful activity since the alleged disability date and has multiple severe impairments: degenerative disc disease, cervical central canal narrowing, spondylosis, radiculopathy, facet arthropathy, spinal stenosis, and neuropathy of right lower extremity. Tr. 20-21. The ALJ found at step three that Plaintiff's impairments do not constitute a listed impairment. Tr. 21. Plaintiff does not challenge this finding. *See* Doc. 25 at 2.

The ALJ determined at step four that Plaintiff's RFC precludes him from performing past work involving heavy exertion (Tr. 24-25), but that he is able to perform medium work with certain restrictions (Tr. 22-24).[1] Specifically, the ALJ found that Plaintiff has the following RFC:

> [T]he claimant has the [RFC] to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he can frequently balance and climb ramps and stairs. He can occasionally stoop, kneel, crouch and crawl. He can never climb ladders, ropes or scaffolds. He can have occasional exposure to moving mechanical parts and unprotected heights[.]

Tr. 22. After discussing the medical evidence and Plaintiff's daily activities, the ALJ explained that this RFC assessment "is well-supported by [the] greater weight of the entire evidence of record, including the opinion evidence . . . [and] the limited treatment records in evidence." Tr. 24. While acknowledging that Plaintiff has some functional limitations, the ALJ explained that "these limitations have been properly accounted for in the [RFC] assessment above and are not significant enough to preclude all employment." *Id.*

Based on Plaintiff's RFC, relevant vocational factors, and testimony from the vocational expert, the ALJ determined at step five that Plaintiff is not disabled because there are a significant number of jobs he can perform, including dining room attendant, cook helper, and lab equipment cleaner. Tr. 25-26.

---

[1] To determine the physical exertion requirements of work in the national economy, the Social Security Administration "classif[ies] jobs as sedentary, light, medium, heavy, and very heavy." 20 CFR §§ 404.1567, 416.967. Medium work is defined as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 CFR §§ 404.1567(c), 416.967(c).

**IV.   Discussion.**

Plaintiff contends that the ALJ's RFC assessment is not supported by substantial evidence because the ALJ relied on stale opinions of state agency medical consultants and failed to consider Plaintiff's worsening impairments following three spinal surgeries. Doc. 25 at 1, 13-22. Plaintiff further contends that the ALJ erred in finding that his daily activities were inconsistent with his claim of disability. *Id.* at 19, 22-24. Defendant argues that the ALJ committed no legal error and his decision is supported by substantial evidence. Doc. 28 at 4-11.

**A.   Opinions of State Agency Reviewing Physicians.**

The state agency reviewing physicians, Drs. Wavak and Kalmar, opined that Plaintiff had the RFC to perform a range of medium work with certain postural and environmental limitations. Tr. 60-70, 82-93 (Exs. 3A, 5A). Dr. Wavak reviewed Plaintiff's medical records and made an initial disability determination on May 30, 2018. Tr. 60-70 (Ex. 3A). Dr. Wavak found that Plaintiff is limited to lifting and carrying 50 pounds occasionally and 25 pounds frequently. Tr. 66.[2] Dr. Wavak further found that Plaintiff could (1) sit, stand, and walk about 6 hours in an 8-hour workday with normal breaks, (2) frequently balance and climb ramps and stairs, and (3) only occasionally stoop, kneel, crouch, and crawl. Tr. 67-68. Regarding other restrictions, Dr. Wavak found that Plaintiff could never climb ladders, ropes, or scaffolds, should not be exposed to unprotected heights, and should avoid exposure to work hazards. *Id.*

Noting that Plaintiff's postural limitations were meant to limit his pain and dynamic range of motion ("ROM") in his spine, Dr. Wavak provided this medical explanation (Tr. 67-68):

> [Claimant] reports injury around [the alleged onset date] with back, neck pain. He was found to have minimal compression deformity on T12 anteriorly. He was treated conservatively. [Follow-up] MRI noted stable

---

[2] "Occasionally" is defined as up to one-third of an 8-hour workday, and "frequently" means one-third to two-thirds of the time. *See* SSR 83-10, 1983 WL 31251, at *5-6 (Jan. 1, 1983); *Johnson v. Berryhill*, No. 16-CV-2615 BTM(JMA), 2017 WL 3478762, at *4 (S.D. Cal. Aug. 14, 2017).

compression to T12.  He continues to report neck pain.  MRI of C-spine no severe cord compression, C3-4 disc osteophyte complex with mild central canal narrowing.  C5-6, C6-7 hypertrophy results in moderate L neural foramen narrowing.  Neurosurgery exam was normal ROM, motor and gait, did note decreased sensation but did not specify where.  Surgery suggested but [claimant] has not had access to further care.  CE gait is normal some unsteadiness with tandem which was not found by neurosurgeon.  ROM back with decreased flexion, extension and rotation, neck decreased rotation, [right] shoulder with 75 degree IR otherwise normal ROM.  [M]otor 5/5.  [S]ensation diminished lateral side [right] thigh and lower leg.  [Straight leg raises] negative.

Based on the medical evidence and her findings, Dr. Wavak opined that Plaintiff was not disabled.  Tr. 69.[3]

On June 6, 2018, Plaintiff had discectomy and fusion surgery on the C3-4 vertebrae. Tr. 378, 695, 732.  Plaintiff experienced difficulty swallowing after the procedure, and had a revision surgery on June 16, 2018.  Tr. 378, 677-679.  He was discharged from the hospital three days later.  Tr. 378.

On November 16, 2018, Dr. Kalmar reviewed Plaintiff's medical records and completed a disability determination at the reconsideration level.  Tr. 82-93 (Ex. 5A).  Dr. Kalmar agreed with Dr. Wavak that Plaintiff had the RFC to perform medium work with certain restrictions and therefore was not disabled.  Tr. 86-92.

The ALJ found the opinions of Drs. Wavak and Kalmar to be consistent with the clinical medical evidence that reflects generally benign examinations with a few exceptions.  Tr. 24; *see* Doc. 28 at 6.  The ALJ was persuaded by the doctors' opinions because they were supported by objective diagnostic testing, impartial analyses of the evidence of record, and well-reasoned conclusions.  Tr. 24.

Plaintiff notes that Dr. Wavak rendered her opinion before his surgeries and that Dr. Kalmar essentially affirmed Dr. Wavak's opinion that Plaintiff is able to perform a range

---

[3] Dr. Wavak noted that there were no medical opinions about Plaintiff's abilities and limitations that were more restrictive than her findings, and that although Plaintiff had been asked to furnish additional evidence he had not done so.  Tr. 68-69; *see also* Tr. 85.

of medium work without changes. Doc. 25 at 16-18.[4] Plaintiff contends that the ALJ erroneously found that that the doctors had accounted for his surgeries. *Id.* at 13-18.

Dr. Wavak did render her opinion before Plaintiff's surgeries in June 2018. *Id.* at 17-18. But Dr. Kalmar clearly was aware of the surgeries, noting that Plaintiff claimed a change in his medical condition due to two neck surgeries and that the change started on June 6, 2018, the date of the first surgery. Tr. 83, 86.[5] Dr. Kalmar also noted that post-surgery examinations in June and October 2018 were normal. Tr. 86; *see* Tr. 362-65, 374-80. Indeed, an examination on June 29, 2018 showed that Plaintiff was doing well postoperatively, he had no neurological deficits, and his pain was controlled. Tr. 374. The examination notes indicate a supple neck with full range of motion, normal muscle strength and tone, normal gait and station, and intact sensation. Tr. 376. An examination three months later, on October 5, 2018, showed that Plaintiff had no significant neck pain or neurological deficit and was "work[ing] as a carpenter and [was] having no issues performing his job." Tr. 362. Dr. Kalmar accounted for Plaintiff's surgeries and reasonably found, like Dr. Wavak, that Plaintiff had the RFC to perform medium work with postural and environmental limitations. Tr. 86-92.

This Circuit has made clear that opinions of state agency reviewing physicians may "serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (citations omitted). Because Drs. Wavak and Kalmar explained their findings with reference to medical evidence in the record, their opinions that Plaintiff could perform a range of medium work constitute substantial evidence upon which the ALJ properly could rely. Indeed, the two opinions together exceed the "low substantial evidence bar" – they

---

[4] Defendant notes, correctly, that Plaintiff fails to specify what additions functional limitations are warranted due to the surgeries. Doc. 28 at 7-8.

[5] Plaintiff had a third cervical surgery in February 2020 (Tr. 662-63), which is discussed further below. Contrary to Plaintiff's assertion, the ALJ did not suggest that Drs. Wavak and Kalmar accounted for that procedure. *See* Docs. 25 at 18, 29 at 3; Tr. 24 (discussing the doctors' opinions and noting that the "current medical evidence reflects a subsequent surgery on the neck").

represent more than a mere scintilla of evidence to support the ALJ's findings and decision. *Ford v. Saul*, 950 F.3d 1141, 1159 (9th Cir. 2020); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (explaining that the "substantial evidence" threshold "is not high"); *Esparza v. Comm'r of Soc. Sec. Admin.*, No. CV-20-00142-PHX-DJH, 2021 WL 527378, at *6 (D. Ariz. Feb. 12, 2021) ("Because substantial evidence is a relatively low evidentiary threshold, the ALJ's conclusion is entitled to deference"); *Minnifield v. Comm'r of Soc. Sec. Admin.*, No. CV-20-00913-PHX-MTL, 2021 WL 100105, at *3 (D. Ariz. Jan. 12, 2021) ("Ultimately, the evidence on [the] issue [of improvement with treatment] points in either direction.  Because substantial evidence is a relatively low evidentiary threshold and highly deferential, *Valentine v. Astrue*, 574 F.3d 685, 690 (9th Cir. 2009), the ALJ's interpretation of the evidence was reasonable."); *Yanez-Palmer v. Comm'r of Soc. Sec. Admin.*, No. CV-19-05865-PHX-DJH, 2020 WL 6589503, at *3 (D. Ariz. Nov. 10, 2020) ("[T]he ALJ cites records indicating that Plaintiff did well following discharge from surgery, she was able to complete all functional activities of daily living, and she had normal range of motion and strength in her extremities.  Though the evidence points both ways on this issue, the ALJ's interpretation is a reasonable one, and thus, is entitled to deference.") (citing *Thomas*, 278 F.3d at 957).

        Plaintiff complains that the ALJ failed to develop the record and relied on the "stale" opinions of Drs. Wavak and Kalmar.  Doc. 25 at 12-13, 17.  But Plaintiff has the duty to prove that he is disabled, *see* 20 C.F.R. §§ 404.1512(a), 416.912(a), and the ALJ's duty to further develop the record is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Ginger R. v. Kijakazi*, No. 20-CV-02524-JLS-JLB, 2022 WL 2713352, at *7 (S.D. Cal. July 13, 2022) (citations omitted).  Contrary to Plaintiff's position, "[t]he mere existence of medical records post-dating a state agency physician's review does not in and of itself trigger a duty to further develop the record."  *Id.* (citation omitted); *see Trevino v. Comm'r of Soc. Sec.*, No. 1:19-CV-01632-EPG, 2021 WL 620700, at *1 (E.D. Cal. Feb. 17, 2021) ("The ALJ did not have a duty to further develop the record solely because the record contained

medical records post-dating the non-examining State agency physicians' review"); *Lamas v. Saul*, No. 1:19-CV-00852-BAM, 2020 WL 6561306, at *10 (E.D. Cal. Nov. 9, 2020) ("The mere existence of medical records post-dating a State agency physician's review does not in and of itself trigger a duty to further develop the record.").

The administrative record in this case spans nearly 800 pages and includes Plaintiff's medical records from various treatment providers and medical facilities between August 2017 and February 2020. *See* Doc. 19, Tr. 1-771. At the hearing on February 21, 2020, Plaintiff's counsel agreed that Exhibits 1A through 12F should be received into evidence and, in response to the ALJ's question, identified no other exhibits that should be considered. Tr. 34-35.[6] The ALJ therefore closed the record. Tr. at 35. The ALJ was not obligated to further develop the record where Plaintiff's counsel agreed that the record was complete. *See Ginger R.*, 2022 WL 2713352, at *7.

Plaintiff's contention that the opinions of Drs. Wavak and Kalmar were "stale" because they did not account for his worsening symptoms provides no basis for vacating the ALJ's decision. Doc. 25 at 12-18. "[T]he fact that a non-examining state agency physician fails to review the entire record does not, by itself, mean that his or her opinion cannot serve as substantial evidence." *McGee v. Comm'r of Soc. Sec.*, No. 1:20-CV-001543-EPG, 2022 WL 2918363, at *3 (E.D. Cal. July 25, 2022) (citation omitted). "This is because 'there is always some time lapse between a consultant's report and the ALJ hearing and decision, and the Social Security regulations impose no limit on such a gap in time.'" *Id.* (quoting *Owen v. Saul*, 808 F. App'x 421, 423 (9th Cir. 2020)); *see Elsey v. Saul*, 782 F. App'x 636, 637 (9th Cir. 2019) ("[T]he fact that Dr. Hale did not consider all of the evidence in his determination does not require the ALJ to discount his opinion. The regulations require that an ALJ evaluate the degree to which a non-examining source considers the evidence, not that a failure to consider all evidence requires the source to be discounted.") (citing 20 C.F.R. § 404.1527(c)(3)); *Lolic v. Comm'r of Soc. Sec. Admin.*,

---

[6] Exhibit 12F included updated records from Flagstaff Medical Center through February 5, 2020. *See* Tr. 35, 656.

No. CV-20-01444-PHX-GMS, 2021 WL 3285348, at *5 (D. Ariz. Aug. 2, 2021) ("the ALJ did not err in considering the opinions, despite that the state examiners did not review the entire record.") (citing *Owen*, 808 F. App'x at 423); *Herrera v. Comm'r of Soc. Sec.*, No. 1:20-CV-01026-SAB, 2022 WL 1165830, at *22 (E.D. Cal. Apr. 20, 2022) ("Plaintiff has not provided legal authority that requires an ALJ to rely on a medical source opinion obtained after a certain point in the patient's medical history, in order to determine the RFC."); *Meyer v. Comm'r of Soc. Sec. Admin.*, No. CV-20-00802-PHX-DJH, 2021 WL 2801775, at *5 (D. Ariz. July 6, 2021) ("it is not legal error to give greater weight to the opinion of a physician who did not review the entire record"); *see also Andrews*, 53 F.3d at 1041 ("[T]he report of a nonexamining, nontreating physician need not be discounted when it 'is not contradicted by all other evidence in the record.'") (quoting *Magallanes*, 881 F.2d at 752); *Bufkin v. Saul*, 836 F. App'x 578, 579 (9th Cir. 2021) ("ALJs need not seek the opinion of a medical expert every time they review new medical evidence and make [an] RFC determination.").[7]

### B.   Opinion of the State Agency Examining Physician.

Dr. Richard Palmer reviewed Plaintiff's medical records and examined him in May 2018.  Tr. 351-60 (Ex. 3F).  Dr. Palmer opined that Plaintiff could perform a range of medium work with certain postural limitations.  *Id.*  The ALJ found Dr. Palmer's opinion to be partially persuasive, explaining that a "restriction to medium exertion is reasonable and consistent with the longitudinal medical record, despite the fact that the doctor examined [Plaintiff] prior to his surgeries."  Tr. 24.

Plaintiff contends that this finding is not supported by substantial evidence because the ALJ failed to account for Plaintiff's post-surgery symptoms.  Doc. 25 at 20.  But the ALJ specifically found that, "as a result of his surgeries, [Plaintiff] has greater postural limitations given ongoing documentation of reduced range of motion."  Tr. 24.  And for

---

[7] Plaintiff's citation to *Rodriguez-Curtis v. Astrue*, No. CV 10-02794-VBK, 2011 WL 536598 (C.D. Cal. Feb. 15, 2011), is misplaced.  Doc. 25 at 17.  The district court in that case merely held that an ALJ should not *reject* an opinion for staleness that is not inconsistent with later medical evidence in the record.  2011 WL 536598, at *3; *see Ginger R.*, 2022 WL 2713352, at *8.

- 9 -

reasons stated above, the ALJ did not err in partially accepting Dr. Palmer's opinion even though he had not reviewed the entire medical record. *See Lolic*, 2021 WL 3285348, at \*5; *Meyer*, 2021 WL 2801775, at \*5.

### C. Plaintiff's Third Surgery in February 2020.

Plaintiff underwent a third cervical surgery on February 5, 2020. Tr. 662-68. The procedure "was uncomplicated [as] there were no intra-operative events." Tr. 662. Plaintiff's "post-operative course was [also] uncomplicated" and he "experienced no medical issues after surgery." *Id.*

The ALJ found that the surgery does not warrant additional limitations. Tr. 24. Plaintiff contends that this finding is not supported by substantial evidence. Doc. 25 at 19. The Court does not agree.

The ALJ explained that a post-surgery examination "was unremarkable and [Plaintiff] was discharged in good condition with no restrictions, only 'activity as tolerated.'" Tr. 23 (citing Ex. 12F/7-8, Tr. 662-63). The ALJ also noted that there is no evidence of complications following the surgery. *Id.* The ALJ did not err in this regard because, as Plaintiff himself recognizes, the evidence of record effectively ended on the day Plaintiff had his third surgery. Doc. 25 at 19; *see also id.* at 16 (noting that the hearing before the ALJ was held only sixteen days after the surgery); *id.* at 21 (noting that there were no follow up examinations in the record documenting Plaintiff's recovery).

Plaintiff asserts that the ALJ impermissibly made a "lay interpretation" by finding that Plaintiff's recovery from the third surgery was successful. Doc. 25 at 21. But the ALJ merely noted that the lack of complications and Plaintiff's ability to participate in the hearing two weeks after surgery "suggest[ed] his recovery was successful." Tr. 23. This was a reasonable inference, and, contrary to Plaintiff's assertion (Doc. 25 at 21), the ALJ did not seek to penalize him for appearing at the hearing. *See* Doc. 28 at 8-9.[8]

---

[8] Plaintiff asserts in his reply that the fact that he underwent surgery without complications and was able to participate in the hearing does not mean that his limitations remained unchanged following surgery. Doc. 29 at 5. This may be true, but there is no evidence in the record showing that his limitations changed after surgery.

- 10 -

Nor did the ALJ "play doctor" and make his own independent medical findings, as Plaintiff contends. Doc. 25 at 20-21. Rather, in assessing Plaintiff's RFC the ALJ properly considered whether the evidence was consistent with the opinions of the state agency physicians. Tr. 22-24. "[T]his is not a situation where all of the opinion evidence in the record has been wholly discounted, resulting in an RFC determination apparently based solely on treatment notes and the plaintiff's testimony." *Deyon v. Kijakazi*, No. 1:20-CV-01532-SKO, 2022 WL 1782465, at *7-8 (E.D. Cal. June 1, 2022) (explaining that the ALJ properly considered the "persuasiveness of [the state agency physician's] opinions, as the ALJ is charged to do"); *see Lopez v. Saul*, No. 1:19-CV-00971-BAM, 2020 WL 6526197, at *8 (E.D. Cal. Nov. 5, 2020) ("Plaintiff's additional argument that the ALJ 'played doctor' by interpreting the medical evidence . . . is likewise without merit. Contrary to Plaintiff's contention, it is within the ALJ's province to synthesize the medical evidence.") (citations and brackets omitted); *Mills v. Comm'r of Soc. Sec.*, No. 2:13-CV-0899-KJN, 2014 WL 4195012, at *4 n.8 (E.D. Cal. Aug. 22, 2014) (rejecting the argument that the ALJ attempted to "play doctor" because "it is the ALJ's responsibility to formulate an RFC that is based on the record *as a whole*," and the ALJ "carefully analyzed the various medical opinions, treatment records, and plaintiff's own testimony in formulating an RFC") (emphasis in original).[9]

Plaintiff does not specify what additional functional limitations the record might establish that were not accounted for in the ALJ's RFC assessment. *See* Doc. 28 at 7-8. To the extent Plaintiff advocates for an alternative interpretation of the evidence in the record, the Court will not second-guess the ALJ's reasonable interpretation, even if such evidence could give rise to inferences more favorable to Plaintiff. While Plaintiff may

---

[9] *See also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) ("the final responsibility for deciding [RFC] is reserved to the Commissioner"); §§ 404.1545(a)(1), 416.945(a)(1) ("We will assess your [RFC] capacity based on all the relevant evidence in your case record."); *Best v. Comm'r of Soc. Sec. Admin.*, No. CV-21-08021-PCT-DGC, 2022 WL 227094, at *10 (D. Ariz. Jan. 26, 2022) ("Contrary to Plaintiff's assertion, the ALJ did not rely on her 'lay impression' of the medical evidence. Rather, the ALJ simply summarized the medical evidence in assessing Plaintiff's RFC. This was proper because it is the responsibility of the ALJ . . . to determine RFC.") (citations and quotation marks omitted).

- 11 -

disagree with the RFC, the Court must uphold the ALJ's determination when, as here, it is a rational interpretation of the evidence. *See Magallanes*, 881 F.2d at 750; *Andrews*, 53 F.3d at 1039-40; *Adams v. Comm'r of Soc. Sec. Admin.*, No. CV-20-01247-PHX-JAT, 2021 WL 2644272, at *4 (D. Ariz. June 28, 2021) ("[I]t is not for this Court to second guess the ALJ's reasonable interpretation of the medical record because 'where evidence is susceptible to more than one rational interpretation, as it is here, it is the ALJ's conclusion that must be upheld.'") (citation omitted).[10]

### D. Plaintiff's Daily Activities.

An ALJ may consider many factors in assessing RFC and weighing symptom testimony, including the "claimant's daily activities." *Mehlos v. Comm'r of Soc. Sec. Admin.*, No. CV-20-02454-PHX-MTL, 2022 WL 3699826, at *6 (D. Ariz. Aug. 26, 2022) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008)); *see also* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i) (permitting consideration of daily activities when weighing symptoms). The ALJ summarized some of Plaintiff's daily activities as follows (Tr. 23):

> The claimant testified he likes to hike multiple times a week. He explained he went camping a month prior to the hearing. Records indicate the claimant's report that he is active (Ex. 8F/2). He reported caring for his mother and stepfather before they passed away (Ex. 8F/3 & 9F/2). He also reports doing yard work, working on cars and doing woodworking (albeit with difficulty) (Ex. 8F/3). Further, while the claimant testified he had not worked since his alleged onset date, records indicate he reported that he was working as a carpenter and reported having "no issues" performing his job in October 2018 (Ex. 4F/2).

---

[10] The ALJ explained that Plaintiff's daily activities, "among other things[,]" showed that the third surgery did not warrant additional limitations. Tr. 24. Plaintiff claims that the ALJ's general reference to "other things" frustrates the Court's review of the ALJ's decision. But the ALJ explained earlier in his decision that the lack of evidence of complications following surgery suggested that the surgery was successful. Tr. 23; *see Magallanes*, 881 F.2d at 755 (noting that a reviewing court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion"). And as the Court will further explain, the ALJ's consideration of Plaintiff's daily activities was proper and supported by substantial evidence.

According to Plaintiff, the ALJ failed to explain how any of his reported activities support the finding that he is capable of performing medium work on a fulltime and sustained basis. Docs. 25 at 22-24, 29 at 5-6. Plaintiff notes that the Social Security Act "does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment[.]" Doc. 25 at 23 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1287 n.7 (9th Cir. 1996)). But this does not mean that an ALJ must find that a claimant's daily activities show an ability to work in order to discount conflicting symptom testimony. To the contrary, "even where a claimant's activities suggest some difficulty in functioning, an ALJ may give less weight to subjective complaints to the extent a claimant's apparent actual level of activity is inconsistent with the extent of functional limitation the claimant has alleged." *Nazarian v. Berryhill*, No. CV 17-1114 JC, 2018 WL 2938581, at *7 (C.D. Cal. June 7, 2018) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

What is more, the ALJ did not find that Plaintiff's activities show an ability to work. He found that the activities, along with the objective medical evidence, show that Plaintiff has "greater sustained capacity than he alleges." Tr. 23. The ALJ did not err in this regard. *See Valentine*, 574 F.3d at 694 (the ALJ properly recognized that daily activities "did not suggest Valentine could return to his old job[,]" but "did suggest that [his] later claims about the severity of his limitations were exaggerated").

Plaintiff further contends that the ALJ mischaracterized evidence of his activities. Doc. 25 at 23-24. The Court does not agree.

The ALJ did not overstate the nature or frequency of Plaintiff's activities, but merely referenced treatment notes and Plaintiff's own testimony indicating that he engaged in these activities. Tr. 23. For example, Plaintiff stated that he hiked up to a mile a few times a week (Tr. 45), went camping a month before the hearing (Tr. 46), and worked as a carpenter in October 2018 with "no issues" (Tr. 362). The ALJ identified a March 2019 treatment note in which Plaintiff reported that he provided physical assistance to his mother and stepfather (Tr. 513), and an October 2019 note that he cared for them before they

recently passed (Tr. 590). The ALJ also noted that, while difficult, Plaintiff worked on cars and did some yardwork and woodwork. Tr. 513.[11]

"Although the evidence of [Plaintiff's] daily activities may also admit of an interpretation more favorable to [him], the ALJ's interpretation was rational, and [the Court] 'must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.'" *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (quoting *Magallanes*, 881 F.2d at 750); *see also Thomas*, 278 F.3d at 959 (explaining that the ALJ may consider daily activities when weighing the claimant's credibility, and, "[i]f the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing").

**V.      Conclusion.**

Having carefully reviewed the ALJ's decision and the record as a whole, the Court finds that the decision is supported by substantial evidence and not based on legal error. The decision therefore will be affirmed.

**IT IS ORDERED** that the final decision of the Commissioner of Social Security (Tr. 1-6, 15-31) is **affirmed**. The Clerk of Court shall enter judgment.

Dated this 7th day of September, 2022.

David G. Campbell
Senior United States District Judge

---

[11] Plaintiff testified at the hearing that it had been about ten years since he had worked on cars or done any woodwork. Tr. 47. But that testimony is not consistent with the March 2019 treatment note indicating that he has difficulty with those activities. Tr. 513. When asked about the inconsistency by the ALJ, Plaintiff explained that he can no longer change a tire or crawl underneath a car. Tr. 47. It is the role of the ALJ, not this Court, "to resolve conflicts in the evidence and determine the credibility of testimony." *D.F. v. Astrue*, No. C10-163 RSL, 2011 WL 485871, at *9 (W.D. Wash. Jan. 19, 2011).